UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

DAVID D. ACEVEDO and GERI JARVIS                     Case No. DG 12-06576
ACEVEDO,                                             Chapter 13
                                                     Hon. Scott W. Dales
                    Debtors.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge


I. INTRODUCTION

Chapter 13 debtors Geri and David Acevedo (the "Debtors") retained attorney Roger G. Cotner, Esq., to represent them in connection with their bankruptcy case. The case is near its conclusion. On October 21, 2014, Mr. Cotner filed his second application for compensation of fees and reimbursement of expenses totaling $6,065.61 (the "Second Application," DN 78). This is in addition to $3,000.00 the court awarded under the order confirming Debtors' Chapter 13 Plan, and fees and expenses of $1,707.33 awarded in response to his first fee application (the "First Application," DN 56). Between the fees awarded at confirmation, those approved by the court in his First Application, and those requested in the Second Application, Mr. Cotner is seeking to be paid a total of $10,772.94 over the course of the Debtors' chapter 13 bankruptcy case, a case the chapter 13 trustee Brett N. Rodgers (the "Trustee") regards as routine and not meriting such an award.

The court held a hearing on November 19, 2014 in Grand Rapids, Michigan, to consider the Second Application, the Trustee's objection (the "Objection," DN 84), and the oral

arguments of counsel. The parties did not request an opportunity to present evidence, and the court took the matter under advisement. The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052 and 9014(c).

## II. JURISDICTION

The United States District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(d)(2), 28 U.S.C. § 1334, and the United States Bankruptcy Court is exercising that authority pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a). This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## III. ANALYSIS

Strictly speaking, the court does not appoint professionals to represent debtors, and therefore their attorneys are generally not entitled to compensation and reimbursement of expenses from estate assets. *See* 11 U.S.C. § 330(a) (listing entities for whom the court may award fees, including "professional person employed under section 327 or 1103"). The Bankruptcy Code, however, makes an exception for compensation of attorneys who represent debtors in chapter 12 and chapter 13 cases:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).  From this section it is clear that a court may award reasonable compensation[1] from estate assets even though the professional is representing the interests of the debtor, rather than the estate.

Although many chapter 13 cases are routine and uncomplicated, many others are deceivingly complex —especially after the 2005 amendments to the Bankruptcy Code known as "BAPCPA."  Regardless, debtors without counsel universally struggle and generally fail to surmount the legal, procedural, reporting, and other hurdles involved in confirming a plan and earning a discharge.  By allowing chapter 13 debtors attorneys to be paid from estate assets, § 330(a)(4)(B)[2] creates an important inducement for debtors to elect relief under chapter 13, which Congress generally favors over chapter 7, and for bankruptcy professionals to assist them.

Nevertheless, § 330(a)(4)(B) also creates tension because it requires one set of stakeholders (the creditors) to pay for the representation of another (the debtors).  In part for this reason, a fee applicant bears the burden of proof on the reasonableness of his fees.  As Chief Judge Shefferly recently observed, the burden establishing the reasonableness of fees "is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." *In re Ulrich*, 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014) (citations omitted).  When evaluating fee petitions, including the Second Application, the court must keep this practical reality in mind.

In an influential opinion predating the most recent amendments to the Bankruptcy Code governing requests for professional compensation from the estate, the United States Court of

---

[1] *Compare* 11 U.S.C. § 330(a)(1) (authorizing award of "reasonable compensation" and "actual, necessary expenses") *with id.* § 330(a)(4)(B) (mentioning only "reasonable compensation").

[2] 11 U.S.C. § 330.  Statutory citations in this opinion, such as "§ 330," shall refer to Title 11, United States Code, unless otherwise indicated.

Appeals for the Sixth Circuit adopted the "lodestar" method of calculating fees.  This method requires the court to evaluate fee requests first by determining "a reasonable hourly rate for the particular attorney handling the case" and then by multiplying "that rate by the reasonable hours worked on the case."  *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991).  Notwithstanding the straightforward formula prescribed in these excerpts from *Boddy*, the court's task in allowing professional fees payable from estate resources is more nuanced, as *Boddy* itself recognizes, and as Congress prescribed in § 330(a)(3).  *See also Ulrich*, 517 B.R. at 81; *see, generally*, Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals, as amended effective Oct. 1, 2013 (the "Fee Memorandum," attached as Exhibit 5 to the court's Local Bankruptcy Rules (W.D. Mich.)).

Under the applicable statute and case law, the court may consider the following factors, among others, while determining the amount of reasonable compensation to be awarded to Mr. Cotner:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The Trustee does not take issue with Mr. Cotner's hourly rate ($220.00), and neither does the court, as it falls within the range of presumptively reasonable rates listed in the court's Fee Memorandum. Nor does the Trustee contend that Mr. Cotner's itemization is in any way dishonest or inaccurate.

Rather, the Trustee challenges the necessity of providing many of the services included in the Second Application, and the amount of time Mr. Cotner devoted to performing them. More generally, the Trustee contends that the Debtors' case was routine by local standards, involving straightforward income calculations (particularly given the 100% dividend provided by the plan),[3] a perfunctory sale of residential real estate, and comparatively little motion practice. The Trustee summarized his position as follows:

> Overall, this rather routine, rather uncomplicated Chapter 13 bankruptcy case by standards employed in the Western District of Michigan does not warrant an award of attorney fees and costs that just over two years amounts to a total of $10,772.94.

*See* Objection at p. 5.

In addition to the Trustee's concerns, the court has its own doubts about the merit of some aspects of the Fee Application, doubts engendered by a close inspection of the time entries. It is fair to say that most of the court's and the Trustee's concerns about the Fee Application relate to Mr. Cotner's judgment in handling the case, in terms of time spent on various tasks and the allocation of the work among professionals, paraprofessionals, and clerical staff. In the end, however, the manner in which Mr. Cotner has kept track of his time —bunching entries, and

---

[3] A plan that proposes to pay creditors in full mitigates the burdens on debtors, creditors, counsel, and the trustee to raise and respond to disposable income and liquidation test concerns. Full payment, however, does not absolve the court of its statutory duty to evaluate fee requests under § 330(a) or, conversely, to supervise the relationship between debtors and their counsel. *See* 11 U.S.C. §§ 329 & 330. In other words, a fee that is not "reasonable" or "necessary" under § 330 is probably "excessive" under § 329, thereby warranting a judicial response irrespective of the dividend proposed.

lumping clerical, paralegal, and legal tasks without allocating time among each task— prevents the court from performing the loadstar analysis. For this reason, the court will deny the Second Application, without prejudice to resubmitting an application that comports with the court's ruling. Nevertheless, the following discussion explains the court's unwillingness to grant the Second Application while providing guidance for correcting the shortcomings that the court and the Trustee have noted.

First, Mr. Cotner appears to have charged .20 hours to "Write up time, disbursements from attending hearing on Trustee's motion to dismiss case, Grand Rapids, MI . . . ." *See* Item No. 121279 (DN 78-3). From this entry, the court infers that Mr. Cotner is charging his client and the estate for keeping track of his time, not just for preparing a fee petition. The court regards this as non-compensable overhead.[4]

Next, the court acknowledges that, as a statutory matter, an attorney may charge a reasonable fee for preparing and filing a fee petition, so long as the compensation for the task is "based on the level and skill reasonably required to prepare the application." 11 U.S.C. § 330(a)(6).[5] The court's own Fee Memorandum contemplates that reasonable *attorney* time may be spent in preparing and reviewing the application. *See* Fee Memorandum at ¶ 11. Although a paralegal professional might have been a more efficient choice for preparing a fee application given the skills required, the court generally allows not more than one hour's worth of attorney time. Here, as reflected in the Second Application, Mr. Cotner spent 2.5 hours preparing and

---

[4] Although Item No. 121279 also includes a reference to reviewing and drafting emails, the court would disallow the entire entry because Mr. Cotner did not comply with the court's prohibition against "lumping" or "bunching." *See* Fee Memorandum at ¶ 4.

[5] In our District, an attorney may also recover reasonable compensation for defending the application. *See In re Boyd v. Engman (In re Engman)*, 404 B.R. 467, 483 (W.D. Mich. 2009); *but see In re ASARCO, L.L.C.*, 751 F.3d 291 (5th Cir.) (disallowing fees incurred in defending fee petition), *cert. granted*, 135 S. Ct. 44 (2014).

reviewing the uncontested First Application,[6] at his hourly rate.  This is in addition to .80 hours of his time included in the First Application (DN 56-3) as Item Nos. 120299, 120665, and 120823, and .10 hours of his paralegal's time.[7]  To prepare the Second Application, Mr. Cotner has already spent one hour, but this does not include the time he will likely charge for traveling to the court and arguing against the Trustee's Objection last Wednesday.  With the exception of .10 hour of paralegal time billed at $85.00 per hour, Mr. Cotner is billing $220.00 per hour.  An attorney's skill (and therefore rate) may not be necessary to prepare a fee petition in all cases, but the court acknowledges the possible reliance of counsel on the Fee Memorandum which, as presently drafted, does allow for recovery of attorney time to some extent.  Regardless, the court hesitates to award even the usual one hour of attorney time, given the deficiencies that an attorney's skill ought to have prevented with respect to the lumping and bunching of time entries, contrary to the requirements of the Fee Memorandum.

The Trustee also contends, and the court agrees, that Mr. Cotner spent too much time preparing the single post-confirmation plan amendment (DN 63), which served only to extend a deadline contained within the plan.  The substance of the change is reflected in a single paragraph in the Second Amendment to Chapter 13 Plan – Post-Confirmation (the "Post-Confirmation Amendment," DN 63):[8]

> The Debtors amend ¶ II A. Additional Provisions paragraph of their plan to provide for the sale of their personal residence within three (3) years of the October 31, 2012, confirmation of their plan due to a slow real estate market.

---

[6] This time is reflected on DN 78-3 at Item Nos. 120926, 120948, 120976, 120984, 121065, and 122165.  The First Application also includes time entries reflecting Mr. Cotner's efforts to recover his fee in connection with the preference case he filed against the American Express Company, Adversary Proceeding No. 13-80120 (Item Nos. 12008 and 12077 on DN 56-3).

[7] Item Nos. 120299, 120665, 120823, and 113273 (DN 56-4).

[8] Although Mr. Cotner labeled this document as the "Second" amendment, it is actually the first (and only) post-confirmation amendment.  *See* LBR 3015(b) (establishing naming convention for post-confirmation plan amendments).

> The Debtors' personal residence remains listed for sale at a reduced price. Based upon information provided by the Debtors' realtor regarding the real estate market for properties like the Debtors' personal residence, it could take at least a year for the Debtors' to sell their personal residence in this real estate climate.

*See* Post-Confirmation Amendment at p. 1.  To prepare and file the simple Post-Confirmation Amendment, Mr. Cotner charged 2.3 hours.[9]  This is an inordinate amount of time to obtain an order extending a deadline.

Similarly, the Trustee contends that Mr. Cotner spent too much time drafting and filing the motion to sell the Debtors' home at 2730 Boston SE, East Grand Rapids and the related motion to shorten notice in connection with the sale motion (collectively the "Sale Motion," DNs 72 & 73).  As noted above, the Debtors' plan contemplated the sale of their residence to fund the repayment of their debts.  From the court's review of the Second Application, it appears that Mr. Cotner spent 14.6 hours communicating with the Debtors and their realtor, drafting, filing, arguing, and finalizing the uncontested Sale Motion.[10]  This figure does not include the time that Mr. Cotner's paralegal spent in connection with the sale.  The five-page Sale Motion, with six pages of exhibits, certainly did not warrant this amount of attorney time.

At the hearing on the Second Application, Mr. Cotner explained that selling the Debtors' long-time residence was difficult for his clients, given the real estate market at the time.  It was also difficult for them emotionally, given how long they had lived there, and according to Mr. Cotner's statements during the hearing, he spent considerable time counseling them, responding to phone calls and emails about the transaction.  Neither of these difficulties, however, justifies

---

[9] *See* Item Nos. 121175, 122184, 122206, 122208, 122227, 122264, and 122810 (DN 78-3).  Most of these entries are lumped and bunched, contrary to the court's requirements.

[10] *See* Item Nos. 121161, 122640, 122641, 122654, 122923, 122956, 122962, 122978, 122980, 123489, 123490, 123494, 123542, 123717, 123750, 124040, 124042, 124047, 124052, 124085, 124089, 124100, 124101, 124102, 124106, 124137, 124138, 124502, 124511, 124514, 124515, and 124525.

the amount of time that Mr. Cotner spent on the routine and uncontested motion, and certainly does not justify handing the creditors the bill.  The court notes that a realtor, who likely gave advice in connection with the sale and marketing, was also involved in the transaction.  And, as for the Debtors' need for emotional support and frequent communication about the sale from their counsel, a debtor's choice to "communicate in an inefficient way" or excessively with counsel does not justify an award in excess of a presumptively reasonable fee.  *Ulrich*, 517 B.R. at 86.

Under the circumstances, the Trustee urges the court to allow only $1,000.00 in connection with the Sale Motion, or roughly 4.5 hours.  Because Mr. Cotner has not persuaded the court that he is entitled to more, and because the court shares the Trustee's concerns in this regard, the court is receptive to the Trustee's suggestion.

Similarly, the Trustee raises doubts about the fees requested for responding to the motion to dismiss which the Trustee filed because the Debtors had not sold their residence by the deadline they proposed in their confirmed plan.  From the court's review of the time entries —a review again complicated by the lumping and bunching of entries— Mr. Cotner spent approximately four hours addressing the dismissal motion.

The Debtors' inability to sell their residence within the time prescribed in their plan was the event that precipitated the Trustee's dismissal motion, as well as what prompted Mr. Cotner to file the Post-Confirmation Amendment to enlarge the deadline.  Indeed, the Trustee withdrew the motion after the court approved the Post-Confirmation Amendment, suggesting a close relationship.  In other words, to a considerable extent, counsel's response to this default (addressing the dismissal motion and moving to enlarge the sale deadline) is duplicative, or at

least overlapping. In any event, the Trustee contends that rather than spending the 4.2 hours identified in the Second Application as related to the dismissal motion, Mr. Cotner should have spent not much more than two hours responding to the motion (or $500.00 worth of time). The court has (again) reviewed Mr. Cotner's page and half response to the dismissal motion, which provides a cursory, narrative explanation for the Debtors' default under their plan, and the court largely agrees with the Trustee's assessment that the fee award should be reduced to reflect an unreasonable amount of time responding to a perfunctory motion, particularly given the overlapping time spent on the Post-Confirmation Amendment.

The court's review of the itemization that Mr. Cotner filed in support of the Second Application raises two general, but nevertheless important, concerns just telegraphed in the foregoing discussion. First, many of the items reflect inappropriate staffing choices given the nature of the work described. Second, Mr. Cotner has made no effort to comply with the proscription against "lumping" or "bunching" tasks that the court has set forth in its Fee Memorandum, specifically the fourth paragraph.

As to the first concern, the itemization attached to the Second Application is rife with examples of Mr. Cotner's performing (and charging an attorney's hourly rate for) clerical and paraprofessional services. Indeed, one entry even notes the clerical nature of the task, yet seeks $66.00 in compensation (billed at $220.00 per hour): "Clerical: assist Heather B. re serve documents on interested parties."[11] This entry immediately follows an entry describing a "[m]eeting with paralegal Heather B. re serving documents on interested parties," and drafting a notice of hearing, for which Mr. Cotner seeks $110.00, and another meeting on the same issues the day before, for which he seeks $22.00. Mr. Cotner seeks compensation at his hourly rate for

---

[11] *See* Item No. 124138 (DN 78-3).

other inappropriate staffing choices, including by way of example only, drafting certificates of no objection, proofs of service, e-filing and uploading documents to the court's CM/ECF system, calendaring dates, reviewing the court's calendar, serving orders, and so forth. The court will not allow compensation at an attorney's rate for tasks that clerical staff or paraprofessionals may perform. *See In re Stover*, 439 B.R. 683 (Bankr. W.D. Mich. 2010); Fee Memorandum at ¶ 9 ("The rate charged must be commensurate with the level of skill required for a particular task..."). The court's concern on this point warrants a further reduction of Mr. Cotner's fee.

As for the pervasive lumping or bunching of tasks within Mr. Cotner's time entries, strict enforcement of the court's Fee Memorandum would warrant an order disallowing most entries as inadequately explained, and therefore "non-compensable." *See* Fee Memorandum at ¶¶ 2-4. Because the lion's share of entries comprise a narrative of several tasks without identifying how much time counsel spent on each, the court cannot determine whether the time spent is reasonable, and thus cannot perform a meaningful loadstar analysis. Mr. Cotner exacerbates the problem by lumping or bunching clerical and legal tasks in one entry. If, for example, the court could determine that he spent .10 hour on preparing a certificate of service or serving papers, perhaps the court would be inclined to award that time albeit at his paralegal's rate ($85.00 per hour). Again, the manner of presentation prevents the court from performing its role. Mr. Cotner had the burden of persuading the court that his request for compensation is appropriate, and the court is not persuaded.

Finally with respect to expenses, the court historically has awarded debtors' counsel reimbursement for expenses incurred in representing debtors, and in this respect the Trustee has not challenged Mr. Cotner's request. The court has reviewed the expenses and based on its review will award them in the amount requested.

IV. CONCLUSION AND ORDER

In general, the court agrees with the Trustee that Chief Judge Shefferly's observation from *Ulrich* fits the present case:

> [The] Law Firm's services in this case were not performed in "a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed," as required by § 330(a)(3)(D); instead the Law Firm performed these services in an unreasonable amount of time in relation to the circumstances in this case.

*Ulrich*, 517 B.R. at 86.  As detailed above, Mr. Cotner spent an unreasonable amount of time on various tasks in this relatively routine chapter 13 case, and performed numerous clerical and paralegal functions at his much higher attorney's rate.

Perhaps a corrected fee petition from Mr. Cotner would permit the court to award something more on account of the time that no one disputes he spent.  Until he files a fee application that meets the court's well-established requirements, however, the court is constrained to deny the compensation requested in the Second Application.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Second Application (DN 78) is DENIED to the extent it seeks compensation for professional fees, without prejudice to renewal, and GRANTED to the extent it seeks reimbursement of expenses in the amount of $44.11.

IT IS FURTHER ORDERED that Mr. Cotner may file a renewed application in conformance with the court's ruling and the other applicable statutory and local requirements, within 28 days after entry of this Memorandum of Decision and Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Roger G. Cotner, Esq., Elizabeth Clark, Esq., Brett N. Rodgers, Esq., and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 24, 2014**



Scott W. Dales
United States Bankruptcy Judge