UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

DAVID D. ACEVEDO and GERI JARVIS          Case No. DG 12-06576
ACEVEDO,                                   Chapter 13
                                           Hon. Scott W. Dales
              Debtors.
_____/

<u>MEMORANDUM OF DECISION AND ORDER</u>

PRESENT:   HONORABLE SCOTT W. DALES
           Chief United States Bankruptcy Judge

I.  INTRODUCTION

In its Memorandum of Decision and Order dated November 24, 2014 (the "MDO," DN 87), the court withheld approval of a fee petition filed by Roger G. Cotner, Esq., who represents chapter 13 debtors Geri and David Acevedo (the "Debtors"). In that fee petition, the second in this case, Mr. Cotner sought approval of post-petition compensation and reimbursement of expenses totaling $6,065.61 (the "Second Application," DN 78), pursuant to 11 U.S.C. § 330(a)(4). This is in addition to $3,000.00 the court previously awarded at confirmation and $1,707.33 in response to Mr. Cotner's first application.

Following oral argument, the court denied the Second Application, but left the door open for Mr. Cotner to resubmit an application in conformance with the court's ruling. Instead of substantively revising the Second Application, however, Mr. Cotner filed Debtors' Attorney's Brief and Supplemental and Renewed Application for Additional Attorney Fees (the "Renewed Second Application," DN 93). Chapter 13 trustee Brett N. Rodgers (the "Trustee") opposes the

Renewed Second Motion, and the court held two hearings, one by telephone on December 31, 2014, and the other in Grand Rapids, on January 21, 2015.

The court will treat the Renewed Second Application as a motion to reconsider the earlier adverse decision,[1] and upon reconsideration, withhold approval of the Second Application albeit for different reasons than those set forth in the MDO.

## II.  JURISDICTION

The United States District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(d)(2), 28 U.S.C. § 1334, and the United States Bankruptcy Court is exercising that authority pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a).  This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## III.  ANALYSIS

As previously explained, the Debtors are nearing the end of their chapter 13 case.  In fact, they have moved away from the Western District of Michigan[2] and wish to move on from their bankruptcy proceedings, too.  To bring closure, Mr. Cotner filed the Second Application reflecting fees and expenses incurred beyond the court's so-called "no look" fee.

The Trustee objected, and because the court believed that it could not perform the "lodestar" method of calculating fees prescribed in *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991), it denied the Second Application by entering the MDO.  More specifically, the court opined that "the manner in which Mr. Cotner has kept track of his time -- bunching entries, and lumping clerical, paralegal, and legal tasks without allocating time among each task -- prevents the court from performing the loadstar analysis." *See* MDO at pp. 5-6.  The court also regarded

---

[1] *See* Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60).

[2] Mr. Cotner reported that his clients now reside in Nashville, Tennessee, yet the docket still reflects an address for them in Grand Rapids.  *See* Fed. R. Bankr. P. 4002(a)(5) (imposing duty on debtors to file change of address).

several of Mr. Cotner's time entries as excessive, at least as documented in the Second Application.  As noted above, the denial was without prejudice to Mr. Cotner's filing a renewed fee petition that addressed the court's concerns.

In reaching its earlier decision, the court noted the important policy reasons undergirding Congress's decision to allow administrative expense treatment for attorney fee claims incurred in representing chapter 13 debtors.  Despite this special treatment available under §§ 330(a)(4) and 503(b)(2), the court also observed:

> Nevertheless, § 330(a)(4)(B) also creates tension because it requires one set of stakeholders (the creditors) to pay for the representation of another (the debtors).  In part for this reason, a fee applicant bears the burden of proof on the reasonableness of his fees.  As Chief Judge Shefferly recently observed, the burden establishing the reasonableness of fees "is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." *In re Ulrich*, 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014) (citations omitted).  When evaluating fee petitions, including the Second Application, the court must keep this practical reality in mind.

*See* MDO at p. 3.

In the Renewed Second Application, Mr. Cotner seizes on what he regards as the court's misconception that the allowance of his fees will reduce the payment to creditors.  In fact, creditors have already received payment in full, according to the plan.  Moreover, Mr. Cotner argues that, during oral argument in November, he advised the court that his clients transferred to him the proceeds of the sale of their residence -- which they exempted under § 522 -- sufficient to pay the $6,065.61 for which he sought approval in the Second Application and in the Renewed Second Application.  Mr. Cotner argues that the court's earlier denial of his fee petition was premised, at least to some extent, on its misapprehension about the source of the payment and the resulting impact on creditors.  He is correct in this respect, but as the court suggested during the New Year's Eve telephone hearing and again in open court on January 21, 2015, this fact, which

the Trustee does not dispute, simply gives another reason to withhold approval of fees, at least as an expense of administration.

As previously noted in its MDO, the fee approval process envisioned under § 330(a) is designed largely to protect the estate from unnecessary, unreasonably high, or otherwise excessive fees.  The protection is important because approval of fees under § 330(a) presages allowance of an administrative claim under § 503(b)(2).  As Judge Shefferly noted in *Ulrich*, courts must be mindful of this reality when approving fees.

When, however, a professional is not seeking compensation for fees and expenses from estate property or, more precisely, property that is not available to pay creditors' claims, the point of approval under § 330(a) vanishes.  This is clear from the applicable rule, which applies only when a lawyer or other professional is seeking compensation or reimbursement "from the estate."  Fed. R. Bankr. P. 2016(a).  In other words, there is no need to protect the estate or creditors from the additional burdens of professional fees if the professional is not looking to the estate for payment.[3]

As set forth in the Renewed Second Application, and again in open court, Mr. Cotner proposes to be paid from the proceeds of the Debtors' exempt property (their former residence).  Regardless of whether these sale proceeds are exempt and entitled to the protections afforded under § 522,[4] payment from the Debtors' funds will not impact creditors or the estate at all because the funds are either protected under § 522,[5] or no longer included within the property of

---

[3] The court notes that attorneys who represent debtors must comply with strict disclosure obligations irrespective of whether they apply for compensation under the Bankruptcy Code.  *See* 11 U.S.C. § 329; Fed. R. Bankr. P. 2016(b).

[4] *See Jackson v. Leitch (In re Jackson)*, 92 B.R. 211 (W.D. Mich. 1988) (proceeds of real estate held as tenants by the entireties did not retain exemption protection where debtor used proceeds for purposes other than acquiring entireties property and did not intend to acquire entireties property with the proceeds).

[5] *See* 11 U.S.C. § 522(c) (exempt property not liable for most types of prepetition claims); *see also Id.* § 522(k) (exempt property is not liable for most administrative claims) and *Law v. Siegel*, 134 S. Ct. 1188 (2014) (same).

the Debtors' bankruptcy estate.[6]  Given this fact, the Trustee's counsel and Mr. Cotner conceded during oral argument that it is neither necessary nor appropriate for the court to consider the Renewed Second Application under § 330, and Mr. Cotner offered to withdraw his fee request for that reason.

Moreover, as the court suggested and the parties agreed, any concerns about Mr. Cotner's fees should be addressed under § 329 if and when a party-in-interest files a motion under that section.  The court will not pursue this relief *sua sponte*.  Assuming it is true that the Debtors support the Renewed Second Application (as Mr. Cotner represented on the record), the court is not inclined to grant relief *sua sponte* under § 329, notwithstanding the court's prior criticism of Mr. Cotner's request for compensation.  Although the court need not decide whether the standards under § 329 and § 330 are the same, it stands to reason that when the economic impact a debtor's representation is "not visited upon a debtor's creditors or estate, the debtor and counsel should have a free hand in arranging their affairs."  *In re Stover*, 439 B.R. 683, 688 (Bankr. W.D. Mich. 2010).  The freedom of contract principle, in other words, counsels against the court's interference, given the representation that the Debtors wish to pay Mr. Cotner for his services as billed.

Although the court will not, on its own initiative, curtail Mr. Cotner's efforts to collect his fees directly from his clients by moving the funds from the trust account to his own account,[7]

---

[6] Although the act of exempting property from the estate under § 522 does not, *ipso facto*, remove property from the estate, *Schwab v. Reilly*, 130 S. Ct. 2652 (2010) (approving trustee's sale of exempt property and payment to debtor of value of the exemption), the court-approved sale of the Debtors' residence unquestionably removed it from the estate, and the chapter 13 plan clearly contemplated that the Debtors -- not the bankruptcy estate -- would retain exempt sale proceeds.  *See* Plan (DN 4) at ¶ II(A) ("Debtors have listed their personal residence for sale and will pay all nonexempt proceeds from the sale of their personal residence to the plan within 12 months of confirmation").  There can be no argument that the proceeds above those needed to complete the Debtors' plan remained within the estate after the sale.

[7] Because the funds deposited into the trust account on or about October 29, 2014 are not within the property of the estate, and because the Debtors incurred the obligation to pay the fees reflected in the Second Application post-

a separate issue under § 329 that came to light at oral argument requires special mention. More specifically, Mr. Cotner did not timely or formally disclose his receipt of the funds from his clients in accordance with § 329 and Fed. R. Bankr. P. 2016.

In the prayer for relief at the end of the Second Application, Mr. Cotner "requests that his fees and expenses be approved and allowed in the total additional amount of $6,065.61 as an administrative expense of the Chapter 13 case, [and] that the Court authorize the Trustee to pay that amount as an administrative claim through the plan . . ." *See* Second Application at p. 4. During oral argument on the Renewed Second Application, Mr. Cotner stated that he had filed the Second Application on October 21, 2014, before he received the sale proceeds from the Debtors on October 29, 2014. This statement explains why the Second Application does not mention his receipt of the sale proceeds -- he had not received them before filing it -- but does not explain his failure to supplement the attorney fee disclosure he originally filed with the court at the beginning of this case. *See* Fed. R. Bankr. P. 2016(b) (debtor's attorney to file supplemental disclosure within 14 days of payment or agreement for payment).

During oral argument on the Renewed Second Application, in response to the court's inquiry, Mr. Cotner argued that he is not required to formally disclose his receipt of the sale proceeds because the proceeds are still in the client trust account. Because he has not applied the funds against the fee charges, he contends that he has not yet received any "payment" to trigger his duty to supplement the original Rule 2016 statement. *See* M.R.P.C. 1.15 (lawyer's duty to segregate client funds). The court rejects the suggestion that holding the payment in his trust

---

petition, the automatic stay does not preclude Mr. Cotner from collecting his fees. *See, generally,* 11 U.S.C. § 362. Of course, the automatic stay would apply if, for example, he were seeking to recover post-petition fees from post-petition wages in a chapter 13 case, because post-petition wages are included within the property of the estate. *Id.* § 1306(a)(2).

account makes formal disclosure under Fed. R. Bankr. P. 2016(b) unnecessary or premature. The text and policy of the applicable federal rule refute the argument.

The text of the rule specifically requires that a "supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b). Certainly, when the Debtors delivered the funds to Mr. Cotner to be applied against his claim for attorney fees, he received "payment" in any ordinary sense of the word. The fact that he has not yet applied the payment, and that he is holding the payment as a fiduciary, does not mean that he received no payment. Moreover, in this District and elsewhere, debtors' counsel regularly disclose receipt of retainers (for unearned fees), pursuant to § 329 and Fed. R. Bankr. P. 2016, despite the contingent nature of the payment and the ethical rule requiring segregation in a trust account. M.R.P.C. 1.15(g).

Further, regardless of whether Mr. Cotner received a payment within the meaning of the Michigan Rules of Professional Conduct because he held the funds in trust, federal law requires counsel to file "a statement of the compensation paid *or agreed to be paid . . .*" 11 U.S.C. § 329(a) (emphasis added). Crediting Mr. Cotner's report that the Debtors tendered the sale proceeds to him in order to pay his fees, the court has no difficulty concluding, at a minimum, that the Debtors and Mr. Cotner *agreed* that the proceeds would be used for that purpose, subject to the court's final approval, and that the agreement and Mr. Cotner's receipt of the funds triggered his disclosure obligations under the Code and rule.

As a policy matter, permitting a debtor's attorney to postpone disclosure of funds received pending his or her decision to transfer money from a trust to non-trust account would dramatically undermine the court's supervisory function. As the Sixth Circuit has observed, "[t]he provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate attorney fees

are designed to protect both creditors and the debtor against overreaching attorneys." *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721 (6th Cir. 2001).  Although not implicated in a chapter 13 case in which the attorney does not represent the estate, timely and complete disclosure of payments helps the court and interested parties identify potentially disqualifying relationships.  *See, e.g., Mapother, PSC v. Mapother Cooper (In re Downs)*, 103 F.3d 472 (6th Cir. 1996); *In re Metropolitan Environmental, Inc.*, 293 B.R. 871 (Bankr. N.D. Ohio 2003).  Mr. Cotner's suggestion that an attorney does not have to disclose the receipt of funds deposited into a client trust account would, if accepted, give an attorney the discretion to determine the timing of the disclosure simply by controlling the transfer from trust to non-trust account.  An "overreaching" attorney, or one who is receiving payment from a third party in a manner that compromises his or her disinterestedness, could delay detection by postponing the transfer (and therefore the "payment").  Obviously the court favors early detection of abusive or excessive fee practices and disqualifying relationships.

Although the court has the authority under § 329 to require disgorgement as a sanction for non-disclosure, or because of the concerns about the fees described in the MDO,[8] the court will not impose a sanction *sua sponte* for several reasons.

First, the current procedural posture of the case does not give Mr. Cotner adequate notice of the possibility of sanction, nor would it afford him a full and fair opportunity to argue that his conduct conformed to applicable law or, if his conduct fell short, that the court should exercise its considerable discretion in fashioning appropriate relief (other than disgorgement).

---

[8] *In re Downs*, 103 F.3d at 478-79 (bankruptcy court has authority to deny compensation as sanction for nondisclosure).

Second, Mr. Cotner *did* disclose the payment on the record in open court, as well as in the Renewed Second Application, demonstrating candor though not compliance.  The imperfect disclosure seems more negligent than willful.

Third, if the Debtors support the Renewed Second Application as Mr. Cotner reported during Wednesday's hearing, disgorgement would only return any overpayment or sanction to the very people who, according to Mr. Cotner, wish to see him paid.[9]  *See* 11 U.S.C. § 329(b)(2) (if court orders disgorgement of non-estate property, court may return funds to the entity that made such payment).  The Debtors, whom § 329 is designed to protect, evidently do not perceive a need for protection under the circumstances.  Other than reiterating an attorney's disclosure obligations -- which the court has already done in the last pages of this opinion -- imposing a sanction would not serve any practical end.

Finally, as everyone agreed on the record, interested parties (including the United States Trustee) remain free to seek relief under § 329 if they believe disgorgement or other sanction is warranted, either because the fee request is unreasonable or because of the inadequate disclosure. There is no need for the court to initiate any sanction proceeding *sua sponte*.

## IV.  CONCLUSION AND ORDER

Mr. Cotner's right to payment from the Debtors or their property (as opposed to the estate or the property of the estate) does not depend on any award under § 330, but rather on state law and his agreement with the Debtors (DN 5).  *See, generally,* 28 U.S.C. § 1652 (Rules of Decision Act); *cf. Lamie v. United States Trustee*, 540 U.S. 526, 537-38 (2004) (noting that it is "routine" and "common practice" for debtors to pay their attorneys without relying on § 330(a), and that § 329 "anticipates these arrangements").  Although the court is declining to approve the fees under § 330, and although interested parties remain free to seek relief under § 329, Mr. Cotner

---

[9] As they have done with their other creditors who have filed claims, they intend to pay Mr. Cotner in full.

may apply the sale proceeds to satisfy his claim for compensation and reimbursement of expenses in accordance with applicable non-bankruptcy law and his agreement with the Debtors.

Finally, as a housekeeping matter, the Debtors, through Mr. Cotner, shall promptly file a change of address form reflecting the Debtors' current address.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.     The Renewed Second Application (DN 93) is DENIED as unnecessary to the extent it seeks relief under § 330; and

2.     Mr. Cotner shall file a change of address form for the Debtors within 7 days after entry of this Memorandum of Decision and Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Roger G. Cotner, Esq., Elizabeth Clark, Esq., Brett N. Rodgers, Esq., the United States Trustee, and upon the Debtors by first class mail at their address in Nashville, Tennessee, promptly after Mr. Cotner files the change of address form as ordered in the immediately preceding paragraph.

END OF ORDER

**IT IS SO ORDERED.**

**Dated January 26, 2015**



_____
Scott W. Dales
United States Bankruptcy Judge